When William Owens, the tenant under Hall, purchased from Coggins the reversion in fee on the land, the two estates, to wit, his term and his reversion in fee then meeting in the same person, would have had the effect of merging the precedent lesser estate in the fee, if there had been no intermediate estate, outstanding in a third person. But merger never takes place, when it would have the effect to destroy intermediate vested estates in third persons. If Coggins' lessees had been the owners of their term in all the land, and the lease was to have commenced immediately, it would in law have been a vested estate in interest for the term of thirty years. And, although they could not have taken possession of their term, inasmuch as the possession belonged to Owen, the first lessee, they would, however, have had a concurrent
lease, and have been entitled to all the rents issuing out (378) of Owen's term; and, on the expiration of that term, they could have legally entered, and possessed the land for the *Page 292 
residue of their own term. If the deed from Coggins to Logan and others created only what is sometimes called a future lease, to wit, a contract to have a lease for thirty years, to commence after the lease to Owen, then it would have conveyed no present estate in the land, either in interest or in possession. It would have been only an interesse termini, which neither makes a merger nor prevents one, but may be accelerated, in the time of its becoming an estate in the land by possession, by the merger of an antecedent vested term by the tremor purchasing in the next immediate estate in reversion.Whitechurch v. Whitechurch, 2 Peere W., 236; Dyer, 112 (a.) 10 Vin. Ab., 204, and 264, 3 Ib., pl. 3; Sheph. Touch., 106. Preston on Estates, 208 to 212 (new pages). The deed from Coggins to Logan et al. can not be construed an estate or lease of the land for thirty years, concurrent with the lease to Owen; because the things, attempted to be leased in that deed, to wit, minerals, timber and fire-wood, were not in law capable of being leased, so as to enable the lessee to have a concurrent
lease with Owen, in those things. Coggins, at the date of his deed to Logan and others, could not himself have entered upon Owen, and opened the mines, cut timber or fire-wood, without the permission of Owen. And if he could not do such things himself, it is certain, that he could not assign to Logan and others the right to do them. This deed, therefore, conveyed no present estate, out of the reversion. It is then to be considered by us, as a contract only, to have the mineral ores, timber, fire-wood, etc., at the time of the expiration of the term of Owen. It then is an interesse termini, and, coming in between Owen's term and reversion, it can not prevent a merger, of his term in his reversion. By that reversion, this interessetermini was accelerated, in the time it was to become an estate. For it was to become an estate, as soon as the thirty (379) years' lease of Owens ceased to exist; and it did cease to exist, as soon as it was merged, to wit, on the very day Owen purchased the fee from Coggins. The instant Owen's term merged in his reversion, that instant the interesse termini of Logan and others sprung into an estate, coupled with a right of entry into the possession of the things leased. They had never alienated their interest in the land by any writing. It, therefore, by the statute of frauds, still remained in them. But Owen and his son, William B. Owen, and the defendants, have continued in the adverse possession of the land, ever since Coggins sold the reversion to Owen, to wit, ever since September, 1831. This bill is an ejectment bill, brought to have an account of the profits of land, which has been, and now is, *Page 293 
in the possession of William Owen and his assignees for many years. This Court never relieves in such a case, before the plaintiffs recover possession of their term at law. And, secondly, the answer of neither of the defendants admits that the two plaintiffs, George W. Logan and John W. Logan, are the executors of John Logan, deceased, or that the said John Logan died testate. The defendants do not admit, that Thomas Dews, Jr., is dead testate; and, if that fact appeared, his executor ought certainly to sue, and not his legatee, Thomas Dews, Sr., as he is described in the bill. There is a replication to all the answers, and there is neither any probate nor any copies of the wills of John Logan or Thomas Dews, Jr. We must, for the reasons above mentioned, dismiss the bill, with costs to be taxed against the plaintiffs.
PER CURIAM. BILL DISMISSED WITH COSTS. *Page 295